# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**RICHARD KENNEDY,**
**Claimant Below, Petitioner**

**FILED**

December 11, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 19-0952** (BOR Appeal No. 2054300)
                        (Claim No. 2002039474)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**WV DIVISION OF ENVIRONMENTAL PROTECTION,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Richard Kennedy, a self-represented litigant, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). The West Virginia Office of Insurance Commissioner, by Counsel Melissa M. Stickler, filed a timely response.

The issue on appeal is medical benefits. The claims administrator denied a request for Hydromorphone, Lidoderm, Oxymorphone, and Tizanidine on January 14, 2019. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its June 4, 2019, Order. The Order was affirmed by the Board of Review on August 16, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Kennedy, an environmental inspector, was injured in a work-related motor vehicle accident on January 28, 2002. He was transported to Charleston Area Medical Center and was

1

admitted to the hospital for an epidural hematoma and a right clavicle fracture. Surgery was performed for the hematoma. The claim was held compensable for clavicle fracture, extradural hemorrhage, myoclonus, osteoarthritis, pneumonia, unspecified chest pain, unspecified head injury, dizziness, giddiness, and extradural hemorrhage with coma.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on January 29, 2003, in which he noted that Mr. Kennedy's motor vehicle accident resulted in him being in a coma for about two weeks. He underwent therapy following his discharge from the hospital and returned to his regular work duties in August of 2002. Dr. Mukkamala diagnosed mild neurological deficit, healed right clavicle fracture, and mild residual brachial plexopathy. Dr. Mukkamala found that Mr. Kennedy had reached maximum medical improvement and required no further treatment.

On June 15, 2003, Mr. Kennedy underwent an independent medical evaluation by Clifford Carlson, M.D. Dr. Carlson diagnosed chronic thoracolumbar spine sprain/strain and continued right shoulder pain and weakness. He found that Mr. Kennedy had reached maximum medical improvement.

In a February 16, 2005, treatment note, Robert Kropac, M.D., diagnosed thoracic spine compression fracture, right shoulder acromioclavicular separation, right clavicle fracture, seizure variant, and subdural hematoma concussion. He opined that Mr. Kennedy would likely need maintenance medications. He prescribed Orudis, Soma, and Neurontin. On April 6, 2006, Mr. Kennedy was given Mobic and Soma. He was prescribed Lidoderm, Percocet, and Orudis on June 19, 2007. On April 1, 2008, Mr. Kennedy was prescribed Percocet, Lidoderm, Voltaren, and Soma. He was seen in February of 2010, February of 2013, July of 2014, September of 2015, and February of 2016 for thoracic pain, right shoulder pain, and head trauma. He reported that medication improved his functioning. Mr. Kennedy was prescribed Zanaflex, Motrin, Prevacid, and a TENS unit.

In a January 15, 2007, independent medical evaluation, ChuanFang Jin, M.D., noted that Mr. Kennedy continued to have some symptoms, especially myoclonic jerking episodes. He was being treated with Soma, Oxycodone, Depakote, and Clonazepam. Dr. Jin opined that Mr. Kennedy had reached maximum medical improvement. Mr. Kennedy was also found to be at maximum medical improvement by John Walden, M.D., on July 25, 2007. Dr. Walken questioned the validity of Mr. Kennedy's jerking episodes.

Mohammed Ranavaya, M.D., performed an independent medical evaluation on July 31, 2008, in which he noted that Mr. Kennedy reported numerous, daily involuntary jerking episodes. Dr. Ranavaya noted that he showed several full body jerking episodes during the examination but did not display such symptoms when he was distracted or thought he was unobserved. Dr. Ranavaya questioned how he could drive, given his jerking episodes and stated that Mr. Kennedy did not provide a sufficient, logical explanation. On examination, Dr. Ranavaya found no evidence of motor or sensory deficits in the extremities. He opined that the jerking episodes were not related to the compensable injury. Dr. Ranavaya concluded that Mr. Kennedy had reached maximum medical improvement for his compensable conditions and required no further treatment.

2

On February 13, 2013, J.O. Othman, M.D., performed a neurosurgical evaluation of Mr. Kennedy in which he noted that Mr. Kennedy suffered a head injury and was in a coma for two and a half weeks. He then required therapy for walking, standing, speaking, and short-term memory issues. Mr. Kennedy returned to regular duty work in 2002. He developed mild involuntary jerking, which worsened. Mr. Kennedy was currently taking Soma, Klonopin, Percocet, Neurontin, Wellbutrin, and Prevacid. Dr. Othman opined that the Klonopin should be increased and that a spinal cord stimulator may be required to control the jerking episodes.

Saghir Mir, M.D., performed an independent medical evaluation on July 11, 2017, in which he opined that Mr. Kennedy's current medication combination of narcotics, benzodiazepines, and muscle relaxers was not safe. He stated that Mr. Kennedy should be weaned from narcotics. Dr. Mir opined that Diazepam was necessary, but Mr. Kennedy should be taken off of muscle relaxers, Tizanidine, and Dilaudid. He also opined that Mr. Kennedy did not require Lidoderm patches.

In a January 31, 2018, pharmacist report, Tiara Reese, Pharm. D., opined that Oxymorphone and Hydromorphone should not be used as first-line treatment for chronic pain due to the risk of addition. She therefore recommended Mr. Kennedy be weaned from the medications. She also stated that Diazepam was not recommended for long-term use due to dependency concerns. Dr. Reese noted that Benzodiazepines and opioids in combination contribute to overdose and should not be taken together. Dr. Reese opined that Mr. Kennedy's combination of Oxymorphone, Hydromorphone, Diazepam, Baclofen, and Tizanidine is dangerous and increases the risk of respiratory distress.

On May 9, 2018, and August 26, 2018, the claims administrator authorized the medications Lidoderm, Tizanidine, Hydromorphone, and Oxymorphone based on a weaning plan prepared by Dr. Reese. On January 14, 2019, the claims administrator denied a request for Hydromorphone, Lidoderm, Oxymorphone, and Tizanidine. It noted that Mr. Kennedy's weaning plan ended on December 31, 2018.

The Office of Judges affirmed the claims administrator's denial of a request for the medications Hydromorphone, Lidoderm, Oxymorphone, and Tizanidine on June 4, 2019. It found that the medication request was not submitted and that the record contains no other medical evidence from a treating physician indicating the medications are reasonable and necessary for the compensable injury. The Office of Judges found that the only physicians of record to address the request at issue were Drs. Mir and Reese, who both opined that Mr. Kennedy should be weaned from Oxymorphone and Hydromorphone. The Office of Judges further determined that the request for the opioid medications should be denied in light of West Virginia Code of State Rules § 85-20. The request for Oxymorphone and Hydromorphone far exceeded the treatment guidelines and there was no evidence indicating the requesting physician completed the documentation required for treatment beyond the guidelines. Further, the Office of Judges found that Mr. Kennedy did not show that his condition substantially improved in the ten years that he was treated with opioid medications, as required by Rule 20. Also, the wean and taper plan had already been completed. The Office of Judges therefore concluded that Oxymorphone and Hydromorphone were properly denied.

Regarding Lidoderm patches and Tizanidine, the Office of Judges found that Dr. Mir opined neither medication was reasonably required or necessary treatment for the compensable injury. Dr. Reese recommended generic Lidoderm patches and did not address the necessity of Tizanidine. Because Mr. Kennedy failed to present evidence from the treating physician of the necessity of the medications, the Office of Judges concluded that Lidoderm patches and Tizanidine were properly denied. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on August 16, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. A preponderance of the evidence fails to show that the requested medications are medically necessary or reasonably related treatment for the compensable injury.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 11, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

4